IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBRA MARGRAVES,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>TA OPERATING, LLC; and C.R. ENGLAND, INC.,<br><br>　　　　　　Defendants. | 4:12CV3152<br><br>**AMENDED MEMORANDUM AND ORDER** |

　　　　This matter is before the court on the motion for summary judgment filed by Defendant TA Operating LLC's ("TA Operating). (Filing No. 48). For the reasons set forth below, the motion is denied.

BACKGROUND

　　　　Plaintiff Debra Margraves ("Margraves") was a student driver for Defendant C.R. England, Inc. ("C.R. England"). (Filing No. 49, ¶ 3 at CM/ECF p. 2). At the time of the events in question, Margraves was in the second phase of her training which required her to complete approximately 15,000 miles of on-the-road training with her mentor, Amani Clemons ("Clemons"). (Filing No. 58 at CM/ECF p. 2).

　　　　On February 4, 2012, as part of Margraves' training, Margraves and Clemons were driving through Nebraska in a semi-truck. (Filing No. 49, ¶ 7 at CM/ECF p. 3). The driving conditions became difficult due to a snow and ice storm. (Filing No. 49, ¶ 8, at CM/ECF p. 3). Margraves and Clemons determined it was unsafe to continue to drive, exited the interstate, and pulled the truck into TA Operating's truck stop at York, Nebraska (the "Truck Stop"). (Filing No. 49, ¶ 8 at CM/ECF p. 3). The Truck Stop complex covers 44 acres, contains multiple buildings and 250 parking spots for tractor trailer rigs. (Filing No. 50-2, ¶5 at CM/ECF p. 1 & Filing No. 50-4 at CM/ECF p. 8).

Margraves and Clemons decided to park and wait out the storm at the Truck Stop. Although they had some initial trouble finding a parking spot due to the high volume of other trucks present, they were able to park at around 12:00 p.m. (Filing No. 58 at CM/ECF p. 3).

After parking, Margraves and Clemons decided to eat lunch at the Truck Stop's main building. (Filing No. 50-5 at CM/ECF p. 10). This required Margraves and Clemons to cross the parking lot – which was covered with some degree of snow and ice. (Id.). After eating, Margraves and Clemons returned to their truck and slept. (Filing No. 50-5 at CM/ECF p. 11). At about 10:00 p.m. Margraves again crossed the parking lot to use the Truck Stop's restroom. (Filing No. 50-5 at CM/ECF p. 11). She returned to her truck and slept the rest of the night. (Filing No. 50-5 at CM/ECF p. 12).

At some point, a third-party company responsible for snow removal at the Truck Stop sent a work crew to remove the snow and ice from the Truck Stop facility. These services generally involve the work of on-site plowing and the application of salt and other material to maintain the surfaces, with the assistance of employees of the Truck Stop.

Margraves awoke at 6:00 a.m. the morning of February 5, 2012, and started her truck so that the truck's bunk heater could charge. (Filing No. 50-5 at CM/ECF p. 12). She noticed it was no longer snowing outside, but she believed ice covered the Truck Stop parking lot. (Id.). Around 8:00 a.m. she left the truck to use the restroom. (Id.). On her return trip from the restroom, Margraves slipped and fell on the ice. (Filing No. 50-5 at CM/ECF p. 13). When she arrived back at her truck she informed Clemons that she was injured. (Filing No. 50-5 at CM/ECF p. 14). Clemons called 9-1-1, and an ambulance arrived shortly thereafter to transport Margraves to the local hospital for

evaluation. (Id.) The examination revealed Margraves had a broken wrist. (Filing No. 50-5 at CM/ECF p. 15).

Margraves filed this action on July 25, 2012 and alleges her injury was due to TA Operating's negligent maintenance of the Truck Stop.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. See Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. See Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).

The moving party bears the burden of showing there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal marks omitted).

ANALYSIS

The parties agree the following elements must be proven to recover for injuries arising from conditions existing on a defendant's premises:

> (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the defendant should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.

Range v. Abbott Sports Complex, 269 Neb. 281, 285-86, 691 N.W.2d 525, 529 (2005).

If a danger is open and obvious, a possessor of land is not liable to the invitee, "unless the possessor should anticipate the harm despite such knowledge [by the invitee] or obviousness." Tichenor v. Lohaus, 212 Neb. 218, 322 N.W.2d 629 (1982); Restatement (Second) Torts § 343A (1965). Comment f of the Restatement (Second) Torts §343A describes the exception as follows:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Restatement (Second) of Torts § 343A (1965). As the Restatement further explains through examples:

> [A] reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself

4

> against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

Restatement (Second) of Torts § 343A, cmt. f (1965).

Tichenor identified the exceptions discussed in comment f as the "momentary distraction" exception and the "necessary use notwithstanding knowledge of the condition" – i.e. "necessary use" exception. Margraves asserts these exceptions apply to her claim against TA Operating.

### 1. Whether TA Operating Should Have Anticipated the Harm.

The parties do not dispute the open and obvious nature of the risk associated with crossing the icy parking lot. However, the parties differ on whether, notwithstanding the open and obvious nature of the risk, TA Operating should have anticipated the harm suffered by Margraves. That is, TA Operating argues neither the "necessary use" nor "monetary distraction" exceptions apply.

Plaintiff argues her use of the Truck Stop parking lot and facilities were necessary because the interstate was becoming treacherous and the Truck Stop was the first and only available place for her to stop. (Filing No. 50-5 at CM/ECF p. 9). Likewise, she argues that her use of the parking lot was necessary because it was the available path for drivers to reach the restaurant and restroom facilities while they waited for travel conditions to improve.

5

TA Operating contends Margraves' use of the Truck Stop, its parking lot and its facilities was not "necessary" and thus it had no further duty to protect Margraves due to the open and obvious nature of risks associated with a slick parking lot. In support of its contention, TA Operating argues that because Margraves entered the premises to avoid the snowy interstate, and not to buy gas or otherwise use the premises, she did not need to walk from her truck to the parking lot.[1] Further, TA Operating asserts Margraves could have used several different routes to the buildings and that the use of her chosen path was unnecessary and not predictable.

The court cannot find as a matter of law that Margraves' use of the Truck Stop and its parking lot was unnecessary. While it is true the cases relied upon generally involve employees or others whose presence was required for work purposes, these cases do not require a finding of an employee-employer relationship plaintiff and the defendant, or that the plaintiff was performing job related-business for the defendant when it used the defendant's premises. Corbin v. Mann's Int'l Meat Specialists, Inc., 214 Neb. 222, 225, 333 N.W.2d 668 (1983); Tichenor, 212 Neb. 218, 322 N.W.2d 629. See generally Hruby v. Albertson's, Inc., case no. 4:09cv3204, 2010 WL 5256353 at *6 (D. Neb. Dec. 15, 2010)(finder of fact could determine that a drug store should have expected one of its customers to either not discover a danger or that she would fail to protect herself). The parties clearly disagree as to whether Margarves' use of the Truck Stop facilities restaurant and restrooms was necessary and whether her chosen walking route was necessary. The multiple issues of a fact surrounding these questions warrant a denial of defendant's summary judgment motion.

---

[1] TA Operating argues that it expected that many truckers would simply park and remain in their cabs until the weather cleared. (Filing No. 49 at CM/ECF p. 16). But they do not allege all of the truckers would be expected to remain in their cabs or that they could not reasonably expect some of the truckers to use the restaurant, convenience store or bathroom facilities.

Likewise, the court cannot find that the "momentary distraction" exception is inapplicable as a matter of law. Defendant argues that there is no evidence "to suggest that Ms. Margraves was distracted or otherwise reasonably excused from paying attention to the open and obvious danger before her." (Filing No. 59 at CM/ECF p. 8). However, the question of whether Margraves was distracted as she traveled across a parking lot and, if so, whether TA Operating could have anticipated any momentary distraction, is a question of fact for the jury to address.

### 2. Whether TA Operating Failed to Use Reasonable Care to Protect Margraves.

Nebraska courts consider the following factors when determining whether a defendant has used reasonable care in maintaining and repairing a premises:

> (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

Aguallo v. City of Scottsbluff, 267 Neb. 801, 806, 678 N.W.2d 82, 89 (2004).

Margraves argues that a genuine issue of material fact exists regarding whether TA Operating failed to reasonably and efficiently remove the snow and ice from its parking lot. TA Operating asks the court to find, as a matter of law, the steps it took in removing the potential hazard – i.e., the snow and ice covered parking lot – were reasonable.

Margraves asserts that no ice-melt or salt were spread on the section of the parking lot which she used to reach the buildings and restrooms at the Truck Stop. (Filing No. [50-5](), at CM/ECF pp. 11 & 13). TA Operating provides evidence stating that one of its employees did spread salt or other ice-melting substances in the area the plaintiff crossed to enter the Truck Stop buildings. (Filing No. [50-1](), ¶ 9 at CM/ECF p. 2). TA Operating also describes, in detail, other steps taken to remove ice and snow around the clock and asserts that not only did it take reasonable steps, but that it took "extraordinary" steps to remove snow and ice. The parties' respective arguments go directly to the question of whether TA Operating used reasonable care in clearing its parking lot. As such, the facts underlying those arguments create a genuine dispute of material fact for the jury to address.

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment, (Filing No. [48]()), is denied.

Dated this 10th day of December, 2013.

                                          BY THE COURT:

                                          *s/ Cheryl R. Zwart*
                                          United States Magistrate Judge